UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONY RICHARD AUSTIN,

                         Plaintiff,

v.                                                         5:14-CV-0177
                                                            (GTS)
COMM'R OF SOC. SEC.,

                         Defendant.
_____

APPEARANCES:                                             OF COUNSEL:

OLINKSY LAW GROUP                             HOWARD OLINSKY, ESQ.
 Counsel for Plaintiff
300 South State Street, Suite 420
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.               GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Tony Richard Austin ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part and Defendant's motion is granted in part and denied in part.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born on April 17, 1965.  He completed high school. Plaintiff worked as laborer.  (T. 134.) Generally, Plaintiff's alleged disability consists of an inability to read and write, and depression. (T. 133.) Plaintiff's alleged disability onset date was January 4, 2008 and his date last insured was December 31, 2013. (T. 23.)

### B.  Procedural History

On June 16, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("SSD") and a Title XVI application for social security insurance ("SSI"). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On June 21, 2010, Plaintiff appeared before the ALJ, Thomas P. Tielens.  (T. 33-55.)  On September 15, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 18-32.)  On September 13, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 7-12.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.  The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. First, the ALJ found that Plaintiff had met the insured status through December 31, 2013 and had not engaged in substantial gainful activity since his alleged onset date. (T. 23.) Second, the ALJ found that Plaintiff had the severe impairments of alcohol dependence disorder, cannabis dependence disorder, adjustment disorder, depressive disorder and dependent personality disorder.  (*Id.*)  Third, the ALJ found that Plaintiff's impairments did

not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 24.) The ALJ considered Listing 12.02, 12.04, 12.06 and 12.09. (*Id*.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels; however, he was able to "understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (T. 26.) Fifth, and finally, the ALJ determined that Plaintiff could not perform his past relevant work; however, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T. 27-28.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ improperly determined that he did not meet the Listing at 12.05C. (Dkt. No. 12 at 8-10 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's RFC determination was unsupported by substantial evidence because he failed to reconcile the RFC assessment with the opinions of Jeanne Shapiro, Ph.D. and J. Dambrocia, Psychology. (*Id.* at 10-12.)[1] Third, Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility. (*Id*. at 12-15.) Fourth, and lastly, the Plaintiff argues that the ALJ failed to consult a vocational expert ("VE"). (*Id*. at 15-16.)

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues that the ALJ properly determined Plaintiff's mental impairment did not satisfy the Listing at 12.05C. (Dkt.

---

[1] J. Dambrocia is a non-examining state agency medical reviewer. Paperwork completed by J. Dambrocia is signed "Dambrocia, J., Psychology." It is unclear if J. Dambrocia's title is "Dr," as neither M.D. nor Ph.D. follow the name. However, since both parties refer to this person as "Dr. Dambrocia" we will too for the sake of uniformity and to avoid confusion.

3

No. 13 at 4-6 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Dr. Shapiro and Dr. Dambrocia's opinions. (*Id.* at 6-7.) Third, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 7-9.) Fourth, and lastly, the Defendant argues the ALJ properly determined jobs existed that Plaintiff could perform. (*Id*. at 9-10.)

## III.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform

his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Improperly Determined That The Plaintiff's Impairment Did Not Meet the Listing at 12.05C

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 8-10 [Pl.'s Mem. of Law]). The Court adds the following analysis.

Listing 12.05 addresses intellectual disability; and claimants are per se disabled if the requirements of paragraphs A, B, C, or D are met. *see* 20 C.F.R. §§ 404.1525(a) and 416.925(a). Listing 12.05 requires, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05. The requirement of paragraph C are met if the plaintiff has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*.

The ALJ concluded that Plaintiff did not meet the requirements of the Listing at 12.05C because 1) Plaintiff's "subaverage intellectual functioning" did not manifest before the age of 22, 2) Plaintiff did not have additional "severe physical impairments," and 3) Plaintiff did not have the requisite deficits of adaptive functioning. (T. 24.)

On May 25, 2008 Plaintiff underwent an intelligence evaluation by consultative examiner, Jeanne Shapiro, Ph.D. (T. 186-195.) Plaintiff scored a verbal IQ of 61, a performance

IQ of 72 and had a full scale IQ of 62. (T. 193.) Plaintiff underwent an intelligence evaluation by Jeffery Donner, Ph.D. in May of 2007 which revealed a full scale IQ of 67. (T. 201-204.)

Plaintiff asserts that absent evidence to the contrary, Plaintiff's IQ has remained stable throughout his life. (Dkt. No. 12 at 9 [Pl.'s Mem. of Law]). Plaintiff's verbal IQ and full scale IQ meet the first prong requirements of Listing 12.05C, even though the testing was conducted after the age of 22. The Second Circuit held that "evidence of a qualifying IQ score as an adult suffices to meet [his] prima facie burden of establishing that [he] suffers from 'significantly subaverage general intellectual functioning . . . initially manifested . . . before age 22.'" *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012). The ALJ concluded that "evidence does not establish that the [Plaintiff's] subaverage intellectual functioning manifested prior to the age of 22. Rather, the record reflects that [Plaintiff's] current levels of cognitive functioning are the result of long-term alcohol and marijuana use." (T. 24.) However, the ALJ failed to provide specific medical evidence in the record that reflects the direct correlation between Plaintiff's alcohol and drug consumption with his subaverage intellectual functioning, and independent review by this Court fails to find it as well. Plaintiff's IQ score should be properly analyzed on remand.

Plaintiff argues the ALJ improperly concluded that Plaintiff did not meet the prong of 12.05C that requires "an additional and significant work-related limitation of function" where Plaintiff has other severe mental impairments. (Dkt. No. 12 at 8 [Pl.'s Mem. of Law]). The ALJ concluded that Plaintiff did not satisfy this requirement because he did not have an additional severe physical impairment. (T. 24.) However, the finding of a severe impairment at step two, mental or physical, fulfills the requirement of an additional and significant work-related limitation of function. *May v. Asture*, 09-CV-0331, 2010 WL 1253646, at *7 (N.D.N.Y March

15, 2010) (holding that the Regulations indicate that the proper test for evaluating an impairment, other than low IQ, under Subsection C of Listing 12.05 is the same test used at step two of the sequential process to determine whether an impairment is severe.) Therefore, the ALJ erred in requiring an additional physical impairment and this issue should be resolved on remand.

Further, the ALJ held that Plaintiff did not meet Listing 12.05C because he did not have the required deficits of adaptive functioning. (T. 24.) [2] Adaptive functioning is an individual's "[] ability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007).

Plaintiff argues evidence in the record supports Plaintiff's deficits in areas of adaptive functioning. (Dkt. No. 12 at 9 [Pl.'s Mem. of Law]). The record indicates that although Plaintiff finished high school, he was in special education classes (T. 37, 137, 258). During the consultative examine, testing revealed that he read at a second grade level and that he was incapable of reading, writing, and doing arithmetic at an age appropriate level (T. at 194.) Dr. Shapiro, opined that Plaintiff had difficulty with simple calculations (T. at 188) and he would be

---

[2] The American Psychiatric Association stated that deficits in adaptive functioning "refer to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." *Diagnostic and Statistical Manual of Mental Disorders (DSM-V)* 37 (5th ed., American Psychiatric Ass'n 2013). Such deficits "limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community." *Id.* at 33. Further, adaptive functioning involves reasoning in three domains: "The *conceptual (academic) domain* involves competence in memory, language, reading, writing, math reasoning, acquisition of practical knowledge, problem solving, and judgment in novel situations, among others. The *social domain* involves awareness of others' thoughts, feelings, and experiences; empathy; interpersonal communication skills; friendship abilities; and social judgment, among others. The *practical domain* involves learning and self-management across life settings, including personal care, job responsibilities, money management, recreation, self-management of behavior, and school and work task organization, among others." *Id.* at 37. This criterion is met when at least one of these three domains of adaptive functioning is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community. *See id.* at 38.

unable to manage funds. (T. at 190.) Testing in 2007 revealed that Plaintiff read below a third grade level and performed math at a fourth grade level (T. at 203.) In support of his conclusion that Plaintiff did not have deficits of adaptive functioning, the ALJ only referred to his long work history. (T. 24.) Failure to examine all relevant evidence of activities that make up adaptive functioning is cause for remand. *Lyons v. Astrue*, 7:13-CV-0614, 2014 WL 4826789, at *10 (N.D.N.Y. Sept. 29, 2014) (remanding where the ALJ failed to discuss all activities that compromise adaptive functioning.) Thus, the Court finds the matter must be remanded for a thorough and comprehensive review of the evidence of Plaintiff's adaptive functioning.

> B. **Whether the ALJ's RFC Determination is Unsupported by Substantial Evidence Because He Failed to Reconcile the RFC Assessment With the Opinions of Dr. Shapiro and Dr. Dambrocia**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 6-7 [Def.'s Mem. of Law]). The Court would add the following analysis.

Plaintiff's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a) and 416.945(a). Here, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels; however, he retained the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. (T. 26.)

Plaintiff alleges the ALJ's RFC analysis is not consistent with the medical evidence supplied by consultative examiner Dr. Shapiro, to whom the ALJ afforded "considerable weight." (Dkt. No. 12 at 10-12 [Pl.'s Mem. of Law]). Dr. Shapiro opined in her medical source statement:

> [Plaintiff] is capable of understanding and following simple instructions and directions. He appears to be capable of performing simple tasks with supervision

9

and independently. Given his overall level of cognitive functioning, he will have difficulty with more complex tasks, instruction or directions. He is capable of performing rote tasks that do not require reading and can work in an appropriate setting in a position for which he has been adequately trained. He appears to be capable of maintaining attention and concentration for talks. He can regularly attend to a routine and maintain a schedule. He appears to be capable of learning some new tasks if little reading is required. He appears to be capable of making some appropriate decisions. He appears to be able to relate to and interact appropriately with others. He appears to be capable of dealing with some stress

(T. 189.)

Plaintiff argues this opinion was inconsistent with the ALJ's RFC determination because the ALJ failed to include a specific limitation in his RFC addressing Plaintiff's difficulty reading and writing. (Dkt. No. 12 at 12 [Pl.'s Mem. of Law]). Plaintiff asserts that Dr. Shapiro opinion "clearly indicates" that Plaintiff was only capable of tasks that "do not require reading." (*Id*.) However, Dr. Shapiro states that Plaintiff was able to perform "rote tasks that do not require reading" and that he was "capable of learning some new tasks if little reading is required." (T. 189.) Dr. Schapiro's opinion does not go so far as to say Plaintiff is illiterate and cannot perform tasks that require reading.

The ability to perform unskilled work is not severely hindered by a limited ability to read and write, "[w]hile illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. pt. 404, subpt. P. app. 2 § 202.00(g). Further, "[b]asic communication is all that is needed to do unskilled work. The ability to hear and understand simple oral instructions or to communicate simple information is sufficient." SSR 96-9p, 1996 WL 374185, at *8 (1996). Therefore, although Dr. Shapiro's limitations are not explicitly stated in ALJ's RFC, they are

implicit due to the very nature of unskilled work. Therefore, the ALJ's RFC analysis limiting Plaintiff to "simple tasks" in a "routing setting" is generally supported by Dr. Shapiro's opinion.

Turning to the opinion evidence of Dr. Dambrocia, Plaintiff argued the ALJ's RFC analysis failed to include Dr. Dambrocia's limitation of "moderate" difficulties in social functioning, namely, Dr. Dambrocia noted Plaintiff was moderately limited in his ability interact appropriately with the general public (T. 223.) However, in other areas of social functioning, Dr. Dambrocia noted Plaintiff was not significantly limited in his ability to respond appropriately to supervisors, get along with coworkers, or to maintain socially appropriate behavior. (*Id.*) Overall he concluded that Plaintiff was able to relate adequately with others. (T. 224.) Further, Dr. Shapiro noted that Plaintiff was cooperative and "his manner of relating, social skills, and overall presentation was adequate." (T. 188.) Therefore, substantial evidence supports the ALJ's RFC which states Plaintiff can respond appropriately to supervision, coworkers, and usual work situations. Since the ALJ's RFC analysis is supported by substantial evidence, remand is not warranted.

### C. Whether the ALJ's Erred in His Credibility Assessment

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 12-15 [Pl.'s Mem. of Law]). The Court adds the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in

11

light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of his impairments are not credible." (T. 26.) In support of his determination the ALJ stated that Plaintiff had a job for ten years (which he lost due to reasons other than his impairments), he received unemployment benefits, he received very little mental health treatment and he continued to use marijuana despite recommendations that he seek treatment. (T. 26-27.)

Plaintiff argued that the ALJ erred in his reliance on Plaintiff's receipt of unemployment benefits. To be sure, several courts in this Circuit have concluded that the collection of unemployment benefits during the period of alleged disability is properly considered by an ALJ when assessing a claimant's credibility. *See Felix v. Astrue,* 11-CV-3697, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination."); *Plouffe v. Astrue,* 3:10-CV-1548, 2011 WL 6010250, at *22 (D.Conn. Aug.4, 2011) (quoting from August 9, 2010 Social Security Administration Memorandum to the effect that: " '[R]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits[,]' but rather, 'is only one of the many factors that must be considered in determining whether the claimant is disabled.' "); *Jackson v. Astrue,* 1:05-CV-01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov.10, 2009) ("Accordingly, the court finds that although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ properly considered plaintiff's claim for unemployment benefits when assessing plaintiff's credibility.").

Plaintiff also argued that the ALJ erred in his reliance on Plaintiff's failure to seek mental health treatment in his credibility assessment. SSR 96–7p provides, in relevant part, that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." SSR 96-7p, 1996 WL 374186, at *2 (1996). Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek

treatment or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.*

The ALJ did not consider any explanation Plaintiff might have for failing to seek other treatment. Here, the record indicated that Plaintiff's "very little" outpatient mental health treatment was due to his financial circumstances, which the ALJ failed to take into consideration. (T. 198, 238, 309.) Further, faulting a person with diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." *See Day v. Astrue,* No. 07-CV-157, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. Jan. 3, 2008) (noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (quoting *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996) and citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 [6th Cir.1989]).

Defendant argues the ALJ's reliance on unemployment benefits was essentially harmless because "he did not solely rely" on this factor. (Dkt. No. 13 at 8 [Def.'s Mem. of Law]) Defendant also argues that the ALJ's reliance on Plaintiff's lack of regular mental health treatment was also harmless because "the ALJ relied on several other valid factors." (*Id*. at 9.) However, the ALJ's error was not harmless, because he did rely exclusively on these factors alone in his credibility determination.

This Court finds that the credibility determination should be revisited on remand. This Court would also add that, although the ALJ properly reiterated the two step analysis in his credibility determination, he failed to answer the threshold question of whether there was an underlying "medically determinable physical or mental impairment . . . that could reasonably be expected to produce the Plaintiff's pain or other symptoms." As this matter is being remanded

14

for a proper credibility determination, it would be practical for the ALJ to also address the threshold question in his analysis on remand. *see Meadors v. Astrue*, 370 Fed.Appx. 179 (2d Cir 2010) (holding it in error where the ALJ failed to address the threshold question, the court was unable to "discern whether the ALJ found that: (1) [plaintiff's] contentions of pain are not reasonable consistent with those medical conditions from which she suffers; or (2) [plaintiff's] contentions of pain are consistent with those medical conditions, but the intensity and persistence she identifies are unsubstantiated and her subjective allegations alone are not credible.")

### D. Whether the ALJ Failed to Consult a VE

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 15-16 [Pl.'s Mem. of Law].) The Court adds the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ decided that there are jobs in the national economy that Plaintiff can perform, relying solely on the Medical-Vocational guidelines.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that there is work existing in significant numbers in the national economy which the plaintiff could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant non-exertional limitations that significantly limit her employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir.1986]). "A plaintiff's range of potential

employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606). However, "the mere existence of a non-exertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410-411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603).

Because remand in necessary so that the ALJ may, among other things, properly assess Plaintiff's impairments at step two and make a proper credibility analysis, remand is also necessary so that the ALJ may revisit his decision at step five of the sequential analysis after having reevaluated his RFC analysis in accordance with this Decision and Order. Should the ALJ determine that Plaintiff has "significant non-exertional limitations that significantly limit her employment opportunities," consultation with a vocational expert may be appropriate. *See Baldwin*, 2009 WL 4931363, at *27.

ACCORDINGLY, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is <u>GRANTED</u> in part and <u>DENIED</u> in part; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 13 is <u>GRANTED</u> in part and <u>DENIED</u> in part; and it is further

ORDERED that this matter is <u>REMANDED</u> to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: June 3, 2015
      Syracuse, NY

Glenn T. Suddaby
U.S. District Judge